FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 09, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JEREMY T.,[1]

                Plaintiff,

     v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                Defendant.

No.    4:21-cv-5076-EFS

**ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS, AND REMANDING THE MATTER FOR PAYMENT OF BENEFITS**

Plaintiff Jeremy T. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for payment of benefits from June 5, 2013, to October 25, 2017.

//

/

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## I.   Factual and Procedural Summary

Plaintiff previously applied for disability benefits. He has congenital abnormalities causing the fourth and fifth fingers to be contracted into flexed positions, and he reports that ongoing use of his hands causes pain in his forearms and leads him to drop things. Plaintiff, who was in special education as a student, has mental-health limitations, including speech latency and social limitations.

In 2011, Plaintiff's disability application was denied by an ALJ, giving rise to a presumption of continuing non-disability.[2] Thereafter, Plaintiff filed for disability benefits again, alleging disability beginning July 5, 2013.[3] In 2016, the ALJ found that Plaintiff failed to rebut the presumption of continuing non-disability; therefore, the ALJ adopted the 2011 findings.[4] Plaintiff appealed the denial to federal court.[5] The assigned magistrate judge found the ALJ consequentially erred by 1) failing to consider the diagnosis of personality disorder and social communication disorder when addressing whether the presumption of non-disability applied, and 2) failing to consider these two new disorders

---

[2] AR 63–86.

[3] AR 40, 167–75.

[4] AR 17–36.

[5] AR 932–39.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

throughout the five-step sequential evaluation.[6] The matter was remanded to the ALJ for further proceedings.

In the interim, Plaintiff filed a new disability application, and the Commissioner found Plaintiff disabled as of October 26, 2017, based on marked limitations with interacting with others and concentrating, persisting, or maintaining pace, as opined by Mary Koehler, M.D.[7] But as to the period between July 5, 2013, and October 25, 2017, the ALJ denied disability following a hearing in 2019 during which Marian Martin, Ph.D. testified. Given the newly added severe impairment of personality disorder, the ALJ determined that Plaintiff had rebutted "in a technical sense" the 2011 presumption of continuing nondisability but he had no additional limitations and therefore his residual functional capacity (RFC) was identical to his 2011 RFC.[8]

Plaintiff appealed the ALJ's denial to the district court. The parties agreed the ALJ harmfully erred, and the district court granted the parties' motion for stipulated remand.[9] The Appeals Council directed the ALJ to obtain "evidence from a medical expert related to the date of [disability onset]" for the relevant period.[10]

---

[6] AR 940–54.

[7] AR 922–31, 957.

[8] AR 814–39.

[9] AR 1355; AR 1342–51.

[10] AR 1352–56.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

In 2021, the ALJ conducted the new hearing and obtained medical-expert testimony from Jay Toews, Ph.D., and again received testimony from Plaintiff as to his symptoms.[11] Dr. Toews testified that Plaintiff could work by himself or in a very small group of coworkers but that he would need assistance from a job coach or vocational counselor to obtain employment because of his social and communication limitations resulting from his personality disorder and other mental-health impairments.[12] Dr. Toews opined that Plaintiff's social and communication limitations dated back to 2007.[13] Plaintiff testified that his social and communication limitations were lifelong.[14]

The ALJ again denied disability benefits. The ALJ found that the presumption of continuing non-disability was only technically rebutted by the addition of personality disorder as a severe impairment and crafted the same RFC as was crafted in 2011, 2016, and 2019.[15] The ALJ specifically found as to the relevant period of July 5, 2013, through October 25, 2017:

- Step one: Plaintiff had not engaged in substantial gainful activity.

---

[11] AR 1279–1309.

[12] AR 1282–98.

[13] AR 1298.

[14] AR 1300–02.

[15] AR 1249–78. *See also* AR 25, 69, 823.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

1

2

3

4

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, dysthymia, generalized anxiety disorder, personality disorder, and congenital deformities of the fourth and fifth finger proximal-interphalangeal joints bilaterally.

5

6

7

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

8

9

10

11

- RFC: Plaintiff had the RFC to perform light work that does not require more than frequent fingering, handling, or feeling and is limited to simple, routine tasks that do not involve more than superficial contact with the public.

12

- Step four: Plaintiff had no past relevant work.

13

14

15

16

17

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as escort vehicle driver, surveillance systems monitor, potato chip sorter, fruit cutter, and document preparer.[16]

18

Plaintiff appealed the denial to federal court.[17]

19

20

21

[16] AR 1249–78.

22

[17] ECF No. 1.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## II.    Analysis

The parties agree the ALJ's analysis again contained harmful error.[18] Yet, the parties disagree as to whether the record clearly establishes that Plaintiff met the definition of disability as of the alleged onset date: July 5, 2013. Plaintiff argues the record is clear that his disability began by that date and therefore benefits from July 5, 2013, to October 25, 2017, should be awarded on remand. In contrast, the Commissioner argues that the record does not clearly establish an onset date for Plaintiff's disability before October 26, 2017, and therefore the matter should be remanded for further proceedings before a different ALJ.

### A.    Legal Standards

#### 1.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[19] Step one assesses whether the claimant is engaged in substantial gainful activity.[20] Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[21] Step three compares the claimant's impairment or combination of impairments to several recognized by the

---

[18] ECF Nos. 18, 24.

[19] 20 C.F.R. § 416.920(a).

[20] *Id.* § 416.920(a)(4)(i).

[21] *Id.* § 416.920(a)(4)(ii).

1

2

3

4

5

6

Commissioner as so severe as to preclude substantial gainful activity.[22] Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's RFC.[23] Step five, the final step, assesses whether the claimant can perform other substantial gainful work— work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[24]

7

       2.    Remand Standard

8

9

10

11

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[25] Three factors must be satisfied for the court to consider remand for payment of benefits:

12

13

14

15

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[26]

16

17

18

[22] 20 C.F.R. § 416.920(a)(4)(iii).

[23] *Id.* § 416.920(a)(4)(iv).

19

20

[24] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

21

22

[25] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

23

[26] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

1

2

3

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[27]

4

5

6

7

8

9

10

Here, the last two factors are satisfied. The parties agree the ALJ failed to provide legally sufficient reasons for rejecting evidence, and if Plaintiff's symptom reports and the testifying medical-expert opinions from 2019 and 2021 are credited as true, the ALJ would be required to find Plaintiff disabled beginning on the alleged onset date of July 5, 2013. Therefore, the only factor at issue is whether the record has been fully developed and whether further administrative proceedings would be useful.

11

12

**B.    The record is fully developed, and further proceedings are not needed.**

13

14

15

16

17

18

"Administrative proceedings are generally useful where the record is not fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time."[28] Here, the relevant period is from July 5, 2013, to October 25, 2017—a period that began almost nine years ago and ended with a disability finding, as of October 26, 2017. There are several treating, examining, and

19

20

21

22

23

[27] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

[28] *Id.* at 1101 (cleaned up).

1
2
3
4

reviewing medical opinions from this period concerning Plaintiff's mental and physical impairments, as well as underlying medical records—including counseling records—and testimony. No further record development will assist consideration of the medical evidence or Plaintiff's symptom reports for this past period.

5
6
7
8
9
10
11
12
13
14

For instance, the Commissioner does not dispute that Plaintiff's hand deformities are lifelong or that Plaintiff suffered from severe mental-health impairments. Rather, the Commissioner disputes whether the record clearly establishes the onset date for Plaintiff's mental-health impairments, namely personality disorder. In support of its position that disability began sometime after July 2013, the Commissioner highlights that 1) Dr. Toews cited evidence from January and November 2017 of deteriorating hygiene, isolation, and less interest, 2) Dr. Marks' examining opinion supports an onset date of August 2017, and 3) Dr. Genthe's 2014 report conflicts with Plaintiff's assertion that he had work preclusive mental limitations in 2013.

15
16
17
18
19
20
21
22
23

However, as is explained below, when these medical opinions are viewed comprehensively and in the context of the full medical record, the record clearly reveals that Plaintiff's disabling social and communication limitations resulting from his personality disorder and other mental-health impairments were present as of the alleged onset date of July 5, 2013. The ALJ's failure to make this determination was impacted by the ALJ's erroneous application of *Chavez v.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*Bowen*[29] and its presumption of continuing nondisability resulting from res-judicata principles.

Although the res-judicata doctrine applies to administrative decisions, the doctrine is "applied less rigidly to administrative proceedings than to judicial proceedings," particularly as to subsequent alleged disability-periods.[30] To overcome the presumption of continuing nondisability, the claimant must prove "changed circumstances."[31] Examples of changed circumstances include "[a]n increase in the severity of the claimant's impairment," "a change in the claimant's age category," or a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application."[32] In addition to the changed circumstance, this new evidence must be material.[33]

Here, there was a changed circumstance after the 2011 disability denial. Plaintiff was diagnosed with personality disorder. When assessing whether this new evidence was material, the ALJ focused solely on whether Plaintiff's conditions

---

[29] 844 F.2d 691, 693 (9th Cir. 1988).

[30] *Chavez*, 844 F.2d at 693 (citing *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).

[31] *Chavez*, 844 F.2d at 693 (citation omitted).

[32] *Lester*, 81 F.3d at 827-28 (citations omitted); *see also* Acquiescence Ruling 97-4(9), available at 1997 WL 742758 at *3.

[33] *Chavez*, 844 F.2d at 694; Acquiescence Ruling 97-4(9).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

had deteriorated since 2011. However, the test for materiality of new evidence is whether "there is a *reasonable possibility* that the new evidence would have changed the outcome" of the Commissioner's determination.[34] Therefore, the materiality test encompasses more than mere deterioration; it instead encompasses whether the new evidence would have changed the outcome of the ALJ's analysis supporting the denial determination.

Here, the lack of a diagnosed personality disorder in 2011 impacted the ALJ's 2011 denial. In 2011, the ALJ discounted Plaintiff's social and communication symptom reports, as well as the mental-health medical opinions, because the symptoms and opined limitations were not fully explained by the then-found mental-health impairments of depression, dysthymia, and anxiety. For instance, in 2011, the ALJ relied in part on a 2006 psychological evaluation wherein Dr. Orr found that Plaintiff demonstrated marked social anxiety but noted that Plaintiff's anxiety would only make it difficult to perform in public or with interpersonal contact. Dr. Orr opined that mental-health intervention would reduce Plaintiff's anxiety/depression and assist him in overcoming social isolation.[35] In contrast to the weight given to Dr. Orr's opinion, the ALJ in 2011 discounted Plaintiff's reported and opined difficulties interacting and

---

[34] *Booz v. Sec'y of Health & Human Servs.*, 734, F.2d 1378, 1380 (9th Cir. 1984) (quoting *Dorsey v. Heckler*, 702 F.2d 597, 60405 (5th Cir. 1983).

[35] AR 71–74.

1

2

3

4

5

6

7

8

communicating with non-family. For instance, the ALJ discounted therapist Gordon Cable's assessment that Plaintiff had difficulties interacting with people and a preference to isolate,[36] and the ALJ highlighted that two medical professionals noted Plaintiff's lack of motivation to engage in activities to improve his self-esteem.[37] In addition, even though Plaintiff exhibited prolonged verbal latency during medical examinations,[38] the ALJ discounted the severity of these communication and social limitations because Plaintiff had not taken psychotropic medications and obtained minimal mental-health treatment:

9

10

11

12

13

14

15

> The claimant's assertion of total disability under the Social Security Act is contradicted by the absence of any treatment sought of his own initiative from his alleged onset date of September 30, 2006, until March 2008, when he initiated mental health counseling . . . . Similarly, the claimant's assertion of total disability under the Social Security Act is contradicted by the absence of evidence documenting more than moderate mental limitations that have primarily pertained to his preference to spend time on his computer rather than engaging in social interaction in person. The claimant has persisted in his failure to follow repeated treating source medical recommendations to undergo a trial of psychotropic medications despite having been reassured that such treatment as likely to relieve his alleged depressive symptoms, a pattern of behavior that has called into

16

17

18

19

20

21

22

23

[36] AR 72–73.

[37] AR 80.

[38] AR 743 (noting "prolonged latency in responding to questions; sometimes did not respond to questions at all, and it is not clear if he was avoiding a response or if he did not know what to say"); AR 782 (reporting that it takes him longer than normal to respond to others).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

question the veracity of his subjective complaints regarding his mental symptoms.[39]

In summary, the 2011 ALJ discounted Plaintiff's mental-health symptoms—both as reported and opined—for reasons that were attributable to Plaintiff's personality disorder, namely his purported failure to seek and maintain treatment and lack of motivation.

Thereafter, Plaintiff was diagnosed with personality disorder. However, even though personality disorder was added as a severe impairment in the subsequent administrative proceedings, the ALJ in 2021 erroneously limited his focus to whether Plaintiff's functioning had deteriorated since 2011:

> I recognize that a new diagnosis, even one that overlaps existing diagnoses, could warrant a change in a claimant's residual functional capacity or "B" criteria ratings, but nothing in the regulations state that a new diagnosis must involve a change. I carefully reviewed the claimant's medical records from 2011 through October 25, 2017 and find that, if anything, his functioning actually improved over that six-year period. Accordingly, there is no new and material evidence warranting a greater restriction in the claimant's functional capacity assessment from what the previous ALJ determined. The claimant even admitted at the most recent hearing that he felt his difficulties had remained the same over the previous 10 years. His testimony is compelling evidence of a lack of deterioration under *Chavez*.[40]

The ALJ failed to appreciate that to assess the materiality of the new evidence fully and fairly, he was required to reexamine all the medical and other evidence through a different lens—the personality-disorder lens—than was

---

[39] AR 80.

[40] AR 1257–58 (emphasis in original omitted).

1
2
3
4

available to the 2011 ALJ.[41] The 2021 ALJ's limited deterioration-focus resulted in the ALJ not fully reweighing Plaintiff's symptom reports or the medical opinions in the context of this new impairment. As a result, the ALJ did not fulfil his directive, which was to determine a new onset date for Plaintiff's disability.

5
6
7
8
9
10
11
12
13
14
15

As to the onset date of disability, the record clearly establishes that Plaintiff has longstanding social and communication difficulties, supporting the alleged disability onset date of July 5, 2013. For instance, in November 2011, Elise Wigginton, M.A., observed Plaintiff's processing speed to be quite slow: "client paused for excessive periods of time before answering questions and processing speed appeared quite slow. Speech was slow and quiet, with impoverished content. Eye contact was fleeting, and client most often had a downward gaze."[42] Ms. Wigginton opined that Plaintiff's "social isolation prevents him from being able to interact with others . . . [and h]is difficulty communicating [with] others inhibits his ability to work effectively."[43] In May 2012, Plaintiff made exceptionally long pauses after questions and exhibited slow processing during a psychological

16
17
18
19
20
21
22
23

---

[41] Even if deterioration is the focus, Dr. Martin testified in 2017 that Plaintiff was markedly limited in interacting with others; whereas, the ALJ in 2011 found Plaintiff had moderate difficulties maintaining social functioning. AR 69, 864–66.

[42] AR 699.

[43] AR 698.

1

2

examination with Tae-Im Moon, Ph.D.[44] In January 2014, Dr. Genthe observed

that Plaintiff:

3

4

5

6

> presented as a socially awkward young man, who had extreme difficulty maintaining a dialogue. He did not maintain eye contact and appeared very shy. When asked questions, he had significant problems coming up with answers and if he did, it was after a significant pause, frequently lasting a minute or longer. He also presented with a history of clinical depression, which is currently not being managed with medication.

7

8

9

> From a social perspective, Mr. Tennyson's ability to interact appropriately with the public was assessed as fair to poor. His ability to get along with coworkers and/or peers was assessed as fair. His ability to respond appropriately to criticism from supervisors was assessed as fair.

10

11

12

13

14

> From a psychological perspective, Mr. Tennyson's prognosis is viewed as guarded. At this time, he is unlikely to function adequately in a work setting until his psychological symptoms have been managed more effectively. Given his response to treatment, and willing participation, a period of no less than 12 months may likely be needed to address his treatment needs at least moderately well, and help him regain the necessary emotional functioning to resume fulltime work related activities. Although his depressive symptoms might respond fairly quickly, his communication problems will require significant mental health interventions.[45]

15

16

17

18

In October 2015, Dr. Moon observed Plaintiff's rate of speech and response to

questions to be slow, and he had poor hygiene.[46] Similarly, during a 2017

consultative psychological examination with Dr. N.K. Marks, Plaintiff

demonstrated weak social skills and understanding, and he processed very slowly

19

20

[44] AR 241–44.

21

[45] AR 358.

22

[46] AR 469–74.

23

1
2
3
4
5
6
7
8
9
10
11
12
13

and methodically.[47] Dr. Marks opined that Plaintiff was markedly limited overall due to his diagnosed mental impairments.[48]

In 2019, Dr. Martin testified that Plaintiff's mental health symptoms were impacted by his "social anxiety disorder and possibly avoidant personality disorder."[49] She found marked limitations with interacting with others.[50] She opined that, although Plaintiff would be able to work in a sheltered type of work environment, he was not capable of working competitively during the relevant period.[51] She mentioned that Plaintiff's "verbal response [delay] time goes with the social anxiety disorder and the . . . avoidant personality characteristics, of not being sure if what you're going to say is going to be criticized."[52] Likewise, in January 2021, Dr. Toews testified that Plaintiff would have difficulty on his own to obtain a job.[53] Dr. Toews also opined that Plaintiff's limitations were likely the same from 2007 onward.[54]

14
15
16
17
18
19
20
21
22
23

---

[47] AR 1120–23.

[48] AR 1120–23.

[49] AR 852.

[50] AR 857–66.

[51] AR 868–69.

[52] AR 873.

[53] AR 1297.

[54] AR 1298.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

1
2
3
4
5
6
7
8
9
10

Therefore, both the testifying medical experts in 2019 and 2021—Dr. Martin and Dr. Toews—agree that Plaintiff's personality disorder was long-standing and when Plaintiff's mental-health limitations resulting from his personality disorder and other mental-health impairments are considered, Plaintiff would have been unable to obtain gainful competitive employment without assistance since at least July 5, 2013.[55] Moreover, in 2017, Dr. Koehler recognized that prior psychological evaluations were "limited by a relative lack of background information and claimant's inability to accurately self-report," thereby indicating that Plaintiff's mental-health limitations were longstanding but had been evading full diagnosis due to a lack of full and accurate information.[56]

11
12
13
14
15
16

Thus, not only was Plaintiff's personality disorder new information that would reasonably change the outcome of the Commissioner's determination, Plaintiff's personality disorder and the entire record clearly shows that Plaintiff's disability began as of July 5, 2013. There are no material conflicts or ambiguities to resolve in this record. No record development is required for this past period. Plaintiff was disabled as of the alleged onset date of July 5, 2013.

17
18
19
20
21
22

[55] *See Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982) (recognizing that the ability to engage in sheltered work does not correspond to an ability to engage in fulltime gainful work).

[56] AR 929.

23

1

### III.    Conclusion

2

On this record, remand for an award of benefits from July 5, 2013, to

3

October 25, 2017, is appropriate.[57] The Commissioner had three opportunities—in

4

2016, 2019, and 2021—to consider the record. Even though circumstances changed

5

after the 2011 denial and the testifying medical experts testified that Plaintiff was

6

unable to obtain gainful employment, each ALJ failed to find disability as of the

7

July 5, 2013 onset date. The record evidence and the series of errors made by the

8

ALJs over the course of this record results in a rare circumstance necessitating

9

remand for an immediate award of benefits.[58]

10

Accordingly, **IT IS HEREBY ORDERED**:

11    1.    Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is

12          **GRANTED**.

13    2.    The Commissioner's Motion for Summary Judgment, **ECF No. 24**, is

14          **DENIED**.

15    3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

16          REVERSING and REMANDING the matter to the Commissioner of

17          Social Security for immediate calculation and award of benefits.

18

19

[57] Because remand is necessary based on Plaintiff's disabling mental-health

20

limitations, the Court need not address Plaintiff's arguments as to his

21

manipulative limitations or step-five.

22

[58] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

4.      The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and

provide copies to all counsel.

**DATED** this 9th day of August 2022.

_____

EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19